IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | CRIMINAL NO. 15-602-2 |
| RALPH TOMMASO | |

### MEMORANDUM OPINION

**Schmehl, J.** */s/JLS*                                                             October 22, 2021

Before the Court is a *pro se* motion filed by Defendant Tommaso that seeks compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). The government has filed a response, and Defendant has filed a reply. Defendant's motion is now ready for decision.

**I.    STATEMENT OF FACTS**

On December 17, 2015, a grand jury returned a 101-count indictment against Ralph Tommaso and his co-conspirator David Dunham. Count 1 charged that between July 2010 and July 2012, both defendants participated in a multiple-object conspiracy to commit wire fraud and defraud the United States. In addition, Tommaso initially faced charges of wire fraud, subscribing to false tax returns, false statements, and obstruction of an agency proceeding. As part of his cooperation plea agreement, all but the conspiracy charge (Count 1) were to be dismissed against defendant Tommaso at sentencing, provided he complied with the terms of his agreement. Defendant Dunham proceeded to trial, and following a 16-day jury trial, was convicted of 54 counts and acquitted of one count. Tommaso testified in the government's case-in-chief against Dunham, and Dunham was later sentenced to 84 months imprisonment.

As he admitted in Court, Tommaso defrauded three federal programs out of at least $17 million. He obtained these funds by repeatedly claiming that his company, Environmental Energy Recycling Corporation, LLC (EERC), was producing and selling millions of gallons of renewable fuel. As Tommaso admitted, these claims were lies, meant to obtain the credits by fraud, often for "renewable fuel" that never existed. On November 17, 2020, this Court imposed the recommended sentence of one year plus one day on Tommaso.

Tommaso is serving his sentence at FCI Fort Dix, with an anticipated release date of January 6, 2022. He has served approximately seven months of his sentence, and has not committed any disciplinary infractions during his time in custody.

On March 17, 2021, Tommaso submitted a request for compassionate release to the warden based upon his hypertension, sleep apnea, hyperlipidemia, and his having been born with no lower right leg, and missing part of his right hand, as well as the risk presented should the defendant contract COVID-19. The warden denied this request on April 21, 2021. On June 29, 2021, Tommaso, *pro se*, submitted a motion to this Court for compassionate release.

The government responded to Tommaso's compassionate release motion and provided his medical records from the Bureau of Prisons. The records reveal that he is 52 years old, presents with primary hypertension (not pulmonary hypertension), hyperlipidemia, and sleep apnea. ECF No. 314. He does not have a lower right leg or part of his right hand. Further, Tommaso refused the Pfizer COVID vaccine on March 24, 2021. *Id.*

II. **LEGAL AUTHORITY**

The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act on December 21, 2018, provides in pertinent part:

> (c) Modification of an Imposed Term of Imprisonment.—The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> > (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

The relevant Sentencing Guidelines policy statement appears at § 1B1.13, and provides that the Court may grant release if "extraordinary and compelling circumstances" exist, "after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable," and the Court determines that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." In application note 1 to the policy statement, the Commission identifies "extraordinary and compelling reasons" that may justify compassionate release as follows:

> 1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2) [regarding

absence of danger to the community], extraordinary and compelling reasons exist under any of the circumstances set forth below:

(A) Medical Condition of the Defendant.—

    (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

    (ii) The defendant is—

        (I) suffering from a serious physical or medical condition,

        (II) suffering from a serious functional or cognitive impairment, or

        (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) Age of the Defendant.—The defendant

    (i) is at least 65 years old;

    (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and

    (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) Family Circumstances.—

    (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

    (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the

>> only available caregiver for the spouse or registered partner.
>
> (D) Other Reasons.— As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

Generally, the defendant has the burden to show circumstances that meet the test for compassionate release. *United States v. Heromin*, 2019 WL 2411311, at *2 (M.D. Fla. June 7, 2019); *United States v. Stowe*, 2019 WL 4673725, at *2 (S.D. Tex. Sept. 25, 2019). The Third Circuit held: "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). *See also United States v. Roeder*, 807 F. App'x 157, 160-61 (3d Cir. 2020) (per curiam) (not precedential) ("the existence of a widespread health risk is not, without more, a sufficient reason for every individual subject to a properly imposed federal sentence of imprisonment to avoid or substantially delay reporting for that sentence."), *id.* at 161 n.16 ("Similarly, the existence of some health risk to every federal prisoner as the result of this global pandemic does not, without more, provide the sole basis for granting release to each and every prisoner within our Circuit.").

If a defendant's medical condition is found to be the type of condition that puts a defendant at the increased risk of an adverse outcome from COVID-19, a court must next analyze the factors under section 3553(a) and the Sentencing Commission's policy statement. Section 3582(c)(1)(A) requires a court to consider the "factors set forth in section 3553(a) to the extent they are applicable" before a sentence may be reduced.

These factors require a determination of whether the sentence served "reflect[s] the nature and circumstances of the offense and the history and characteristics of the defendant;" "reflect[s] the seriousness of the offense;" "promote[s] respect of the law;" and "afford[s] adequate deterrence to criminal conduct." The statute also instructs a court to consider the Sentencing Commission's policy statement, which allows a sentence reduction only if "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13.

### III. DISCUSSION

As stated above, Tommaso asserts that he suffers from a condition that is a CDC risk factor in relation to COVID-19. The CDC's list of risk factors was most recently updated on March 29, 2021. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-withmedical-conditions.html. It reports a list of conditions that "can make you more likely to get severely ill from COVID-19. However, the CDC has consistently indicated that there is insufficient evidence to conclude that hypertension places a person at a greater risk of a severe outcome from COVID-19. The CDC previously stated that hypertension "might" present a risk, and more recently stated that it "possibly" can make a person more prone to severe illness, as distinct from many other conditions that the CDC states can make severe illness more likely. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-withmedical-conditions.html. Accordingly, many courts have denied relief when hypertension is the only potential risk factor presented, even after the CDC's March 29, 2021, revision of its list of risk factors, which singled out hypertension as only "possibly" presenting a risk. *See, e.g., United States v. Jackson*, 847 F. App'x 792, 796 (11th Cir. 2021) (not

precedential) (as the risk of severe disease for one suffering from hypertension "is only potentially higher," the district court did not abuse its discretion in denying relief); *United States v. Bell*, 2021 WL 1839523, at *3 (E.D. Pa. May 7, 2021) (Pratter, J.) (hypertension and obesity (BMI of 33) in isolation are not sufficient to warrant release); *United States v. Garcia*, 2021 WL 2269693, at *4 (E.D. Pa. June 3, 2021) (Jones, J.) (hypertension is not a definite risk); *United States v. Phillips*, 2021 WL 2346101 (E.D. Pa. June 8, 2021) (Joyner, J.) (obesity (31.7) and hypertension of 50-year-old man do not present extraordinary circumstances); *United States v. Campbell*, 2021 WL 1733395, at *3 (E.D. Wis. May 3, 2021) (Stadtmueller, J.) (hypertension is not an extraordinary and compelling circumstance). Therefore, compassionate release would not be warranted to Tommaso based upon his medical condition even before the development of highly effective vaccines.

      Moreover, Tommaso is clearly not entitled to relief given the availability of a vaccine. On March 24, 2021, the defendant was offered the Pfizer COVID-19 vaccine, and he refused it. He has no known medical contraindications for the vaccine. In his reply, Tommaso sets forth several statements as to why he refused and is opposed to vaccination, none of which are persuasive to this Court. One such argument is no longer even relevant, as he argues the COVID-19 vaccinations are not approved by the FDA. However, the FDA approved the Pfizer vaccine (the very vaccine that Tommaso refused) on August 23, 2021. https://www.fda.gov/news-events/press-announcements/fda-approves-first-covid-19-vaccine.

      Tommaso's reply reiterates much of the anti-vaccination rhetoric that is prevalent in our country right now; however, I find none of his arguments to be persuasive.

Tommaso is well within his rights to refuse vaccination. However, he cannot then claim that he must be released due to a risk of health complications that could be virtually eliminated by that same vaccine. *See United States v. Kassis,* 2021 WL 3489816, at *3 (E.D. Pa. Aug. 9, 2021) ("If the Court was to hold that the mere refusal to be vaccinated represents an extraordinary and compelling reason to warrant release, then inmates would be incentivized to refuse vaccinations"); *United States v. Jackson*, 2021 WL 1145903, at *2 (E.D. Pa. Mar. 25, 2021) (denying compassionate release for 58-year-old inmate with several medical conditions who refused Moderna COVID-19 vaccine and "voluntarily declined to 'provide self-care' and mitigate her risk of a severe COVID-19 infection"); *United States v. Jackson*, 2021 WL 806366, at * 2 (D. Minn. March 3, 2021) ("Jackson's decision to refuse the vaccine flies in the face of any medical recommendation regarding the vaccines. While he is within his rights to refuse any treatment he wishes to forego, he cannot simultaneously claim that he must be released because of the risk of complications while refusing a vaccine that could virtually eliminate that risk.") *See also United States v. Adams,* 2021WL 2822939 (E.D. Pa., July 7, 2021); *United States v. Ortiz*, 2021 WL 1422816 (E.D. Pa. Apr. 15, 2021); *United States v. Bautista*, 2021 WL 1264596 (E.D. Pa. Apr.6, 2021); *United States v. Jackson*, 2021 WL 1145903 (E.D. Pa. Mar. 25, 2021); *United States v. Robinson*, 2021 WL 719658 (W.D. Pa. Feb. 23, 2021).

Tommaso refused the Pfizer COVID vaccine on March 24, 2021. ECF No. 314. Thus, it seems Tommaso has voluntarily declined to mitigate his risk of a severe COVID-19 infection. There is no apparent medical reason why Tommaso should not receive the vaccine, as the records state that he merely "refused." Accordingly, I find that his refusal

to accept a vaccine negates any "extraordinary and compelling reason" for relief that he would otherwise have, such as his hypertension.

Even assuming Tommaso could present an extraordinary and compelling reason for relief, in examining the 3553(a) factors, his release still must be denied. In examining these factors, I must evaluate whether the sentence served reflects the nature and circumstances of the offense and the history and characteristics of the defendant, reflects the seriousness of the offense, promotes respect of the law, and affords adequate deterrence to criminal conduct.

First, Tommaso has served approximately eight months of his 12-month plus one day sentence. Accordingly, he has served approximately fifty-eight percent of his sentence. His sentence was significantly shorter than that of his co-defendant, who was sentenced to 84 months imprisonment for the same conduct as Tommaso. Further, Tommaso defrauded three government agencies out of $17 million. At the time of his sentencing, he received ample consideration for his cooperation with the government. Based upon the seriousness of Tommaso's crime and the need to provide just punishment, compassionate release is not warranted. *See, e.g., United States v. Tartaglione*, 2020 WL 3969778 at *7 (E.D. Pa. July 14, 2020) (Slomsky, J.) (reduction of 82-month sentence, which itself was a downward variance, after two years, would be inappropriate, where the defendant committed a $2 million fraud against a public health clinic); *United States v. Buckman*, 2020 WL 4201509, at *5 (E.D. Pa. July 22, 2020) (Surrick, J.) (reduction of 42-month sentence for $3 million mortgage fraud, after 15 months, would undermine the purposes of sentencing). Much like the Defendant in

*Buckman*, Tommaso's release after only 8 months would undermine the purposes of sentencing.

Further, The Federal Bureau of Prisons, as of the date of this opinion, reports that there are 3,055 inmates housed at FCI Fort Dix. FEDERAL BUREAU OF PRISONS, *FCI Fort Dix*, https://www.bop.gov/locations/list.jsp (last visited on October 20, 2021). As of the date of this opinion, only 5 staff members and 2 inmates are infected with COVID-19 at FCI Fort Dix. FEDERAL BUREAU OF PRISONS, *COVID-19 Coronavirus*, https://www.bop.gov/coronavirus/ (last visited on October 20, 2021). Further, there are 259 staff members and 2,019 inmates at FCI Fort Dix who have received COVID-19 vaccinations. FEDERAL BUREAU OF PRISONS, *FCI Fort Dix*, https://www.bop.gov/coronavirus/ (last visited on October 20, 2021).

Accordingly, even though Tommaso's hypertension may increase his likelihood of an adverse outcome from COVID-19, when considering the 3553 factors, the low case numbers at FCI Fort Dix and the availability of vaccines to inmates such as Tommaso, he does not warrant a sentence reduction or release in any fashion at the present time.

## IV. CONCLUSION

For the foregoing reasons, Tommaso's motion for compassionate release is denied.